UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CLAVIA JOHNSON

    Plaintiff,

vs                                           CASE NO: 6:21-cv-1196

7470 HIGHWAY 530, LLC

    Defendant
_____ )

**PLAINTIFF'S COMPLAINT AND
DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, CLAVIA JOHNSON, (hereinafter "Plaintiff" or "Johnson") and files his Second Amended Complaint against Defendant, 7470 HIGHWAY 530, LLC (hereinafter "Defendant"), and in support she states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") to redress Defendant's unlawful employment practices against Plaintiff including discrimination, harassment, and retaliation because of her disability, and for exercising, or attempting to exercise, her rights under the FMLA leading to Plaintiff's unlawful termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the FMLA and ADA.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

## THE PARTIES

4. Plaintiff is a citizen of the United States, and was at all times material, a resident of the state of Florida, residing in Clermont, Florida.

5. Plaintiff was employed by Defendant for more than more than 12 total months.

6. Plaintiff and worked more than 1,250 hours for the Defendant in the year preceding her request for leave pursuant to her serious medical condition.

7. Defendant is a Florida for-profit corporation with its principal place of business in Kissimmee, Florida.

8. Defendant is registered to do business in the state of Florida and, Plaintiff worked for Defendant.

9. Defendant is an employer as defined by all laws under which this action is brought and employs more than 50 employees.

## PROCEDURAL REQUIREMENTS

10. Plaintiff has complied with all statutory prerequisites to filing this action.

11. On August 12, 2019, Plaintiff dual-filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e) based on disability and retaliation.

12. Plaintiff's charge was filed within three hundred days of the date the alleged unlawful employment practices occurred.

13. On April 26, 2021, the EEOC issued to Plaintiff a Dismissal and Notice of Rights.

14. Plaintiff's Complaint was filed within ninety days following her receipt of the EEOC's Dismissal and Notice of Rights.

15. The Florida Commission on Human Relations failed to conciliate or determine whether there was reasonable cause on Plaintiff's complaint within 180 days of the Plaintiff filing the aforementioned charge.

## FACTUAL ALLEGATIONS

16. On or about August of 2011, Plaintiff began working full-time for Defendant and was employed as an office coordinator/supervisor.

17. Plaintiff continued to serve in that role until her termination in April of 2019.

18. On or about the fall of 2013, Plaintiff suffered a workplace injury to her back.

19. Plaintiff was ultimately diagnosed with a degenerative, chronic back condition.

20. Plaintiff's back injury was a serious medical condition covered under the FMLA, as it required her to seek continuing treatment by healthcare providers.

21. Following that workplace injury, Plaintiff filed a workers compensation claim with the Defendant and sought medical treatment, including physical therapy and chiropractic treatment for her chronic injuries.

22. Plaintiff's injuries did not fully heal, leaving her with a degenerative disability limiting her major life activities in the following ways:

    a. difficulty standing for long periods of time;

    b. walking more than 1,000 feet without breaks;

    c. repetitively bending over at the back and waist;

    d. getting in and out of vehicles; and

    e. carrying anything more than 15 pounds.

23. Specifically, during flare-ups of Plaintiff's disability, she would need short leaves from work for rest and recouperation.

24. Plaintiff was entitled to such leave under the ADA, as it was a reasonable accommodation and did not create an undue hardship for the Defendant, who employs more than 65 employees with similar job functions.

25. Plaintiff was also entitled to intermittent leave under the FMLA for her serious medical condition.

26. Defendant was fully aware of Plaintiff's disability, as it had first-hand knowledge of her workplace injuries, prior workers compensation claims, and subsequent residual disability.

27. On or about March 21, 2019, Plaintiff text messaged her immediate supervisor, Rosie Davila, executive housekeeper, informing Davila of Plaintiff's flair-up of her condition consistent with her known diagnosis.

28. A few weeks later, on or about April 15, 2019, Plaintiff overexerted herself by inspecting and cleaning more than 70 rooms, exceeding housekeeper expectations for a given shift.

29. This led to a flair-up of Plaintiff's condition.

30. Plaintiff contacted Ms. Davila, informing her she was experiencing terrible back pain.

31. As a result of the flair-up, Plaintiff was unable to work the following day, April 16, 2019.

32. Plaintiff's next scheduled workday was April 18, 2019.

33. When Plaintiff returned to work April 18, 2019, Defendant presented her with a disciplinary write-up containing false accusations.

34. Plaintiff refused to sign the pretextual writeup.

35. Prior to the April 18, 2019 write-up, Plaintiff had a spotless disciplinary record with zero write-ups for the more than 7 ½ years she was employed with the Defendant.

36. The following day, April 19, 2019, while Plaintiff was working pursuant to her posted schedule, Plaintiff was called into the general manager, Andrew Shiavonne's office.

37. Shiavonne, Davila, and Carlos Flores, comptroller and assistant general manager, informed Plaintiff she was not scheduled to work that day, based upon a surreptitiously altered work schedule.

38. After leaving work, Plaintiff received notification from a colleague that her name had been scratched off on the schedule for the remainder of the week, including the following shifts for which she was previously scheduled: April 21, 2019, April 22, 2019, and April 25, 2019.

39. On or about April 21, 2019, Plaintiff provided an orthopedic report to Davila, informing her specific details of her condition (and disability flair-up) and demonstrating that she has workplace accommodations in place.

40. Two days later, Plaintiff begged Flores for her job and provided a doctor's note, excusing her for the April 16, 2019 absence due to her medical disability.

41. The following week, Plaintiff's name was removed entirely from the schedule.

42. Plaintiff was never returned to work, and her name was never placed back on the schedule.

43. The discrimination and retaliation Plaintiff was subjected to was perpetrated by Defendant's employees with direct supervisory authority over Plaintiff, as well as the Defendant's assistant general manager, and general manager.

44. Defendant knew or should have known of the discrimination and retaliatory conduct because its supervisors and members of management observed it and/or participated in it.

45. The effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

46. The unlawful employment practices complained of in the abovementioned paragraphs were intentional.

47. The unlawful employment practices complained of in the aforementioned paragraphs were done with malice or with reckless indifference to the statutory and/or federally protected rights of Plaintiff.

48. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

49. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

50. Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

51. Plaintiff has been damaged by Defendant's illegal conduct.

52. Plaintiff has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### Count I: Disability Discrimination in Violation of the ADA

53. Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-52 above.

54. Defendant is prohibited under the ADA from discriminating against Plaintiff because of Plaintiff's medical condition regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

55. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on her disability.

56. Defendant intentionally discriminated against Plaintiff based on her disability.

57. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

58. Defendant's unlawful conduct in violation of the ADA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### **Count II: Failure to Accommodate in Violation of the ADA**

59. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-52.

60. Plaintiff is a disabled person as defined by the ADA in that she has an actual disability, has a record of being disabled, and/or was perceived as being disabled by Defendant.

61. Defendant failed to engage in the interactive process and failed to accommodate Plaintiff as required by the ADA.

62. Plaintiff would have been able to perform the essential duties of her job with the requested reasonable accommodation.

63. As a result of the foregoing, Plaintiff was injured; to have her career significantly and adversely impacted; to forgo compensation and benefits; and to endure embarrassment, mental anguish and emotional distress.

## Count III: Retaliation in Violation of the ADA

64. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-52.

65. Plaintiff engaged in protected activity under the ADA while employed by Defendant by requesting time off work due to her disability.

66. Defendant intentionally retaliated against Plaintiff for engaging in protected activity under the ADA by terminating Plaintiff's employment.

67. Defendant's conduct violated the ADA.

68. Defendant's discriminatory conduct in violation of the ADA has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

69. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

70. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages.

### Count IV: FMLA Retaliation

71. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-52.

72. Plaintiff was an employee eligible for protected leave under the FMLA.

73. Plaintiff was qualified for her position, which she maintained for nearly eight years.

74. Defendant is and was an employer as defined by the FMLA.

75. Plaintiff exercised, or attempted to exercise, her rights under the FMLA.

76. Defendant retaliated against Plaintiff—by removing her from the schedule entirely and terminating her employment—for exercising, or attempting to exercise, her FMLA rights.

77. Defendants' adverse employment action—removal from the schedule and ultimate termination—immediately following her request for FMLA leave demonstrates a causal connection between the protected action and the retaliation for asserting her FMLA rights.

78. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

79. Plaintiff was injured due to Defendant's willful violation of the FMLA, to which she is entitled to legal relief.

### Count V: FMLA Interference

80. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-52.

81. Plaintiff was an employee eligible for protected leave under the FMLA.

82. Defendant is and was an employer as defined by the FMLA.

83. Plaintiff was entitled to take leave under the FMLA, including the intermittent leave she requested pursuant to her back flair-up.

84. Plaintiff exercised, or attempted to exercise, her rights under the FMLA.

85. Defendant interfered with or denied Plaintiff's lawful exercise of her FMLA rights.

86. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

87. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which he is entitled to legal relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b)   Grant Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c)   Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

POUGET LAW OFFICES P.L.L.C.
1201 6th Ave W., A336
Bradenton, FL 34205
Tel: 813-400-9756
andrew@pougetlaw.com
service@pougetlaw.com
www.Pougetlaw.com
Attorney for Plaintiff

By: /s/ Andrew J. Pouget
Andrew Pouget, Esq.
FBN: 1013551